460 So.2d 975 (1984)
Joseph W. MAUGERI, Appellant,
v.
The STATE of Florida, Appellee.
No. 82-1896.
District Court of Appeal of Florida, Third District.
December 18, 1984.
*976 Edward A. Carhart and Bonnie Lano Rippingille, Coral Gables, for appellant.
Jim Smith, Atty. Gen. and Penny Hershoff Brill, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and BARKDULL and NESBITT, JJ.
SCHWARTZ, Chief Judge.
The primary issue on this appeal from convictions of the first degree murder of Peter Castellano and the burglary of his home concerns the admissibility of the testimony of the victim's live-in girlfriend, Lori Ford, that he told her the day before the killing that he had stolen two kilograms of cocaine from the defendant Joseph Maugeri's airplane  as opposed to $8,000 in cash which Maugeri said had been placed there. After lengthy and thorough consideration, we have determined that this evidence, although uncontestably hearsay, section 90.802, Florida Statutes (1981), was properly admitted as a statement against penal interest under the hearsay exception embodied in section 90.804(2)(c), Florida Statutes (1981),[1] the reception of which did not offend the defendant's right to confrontation under the sixth amendment of the United States Constitution.
Castellano was shot and killed during an altercation at his home by Robert Worthington, an employee of Maugeri and the father of Maugeri's paramour, Carol Ziegler. Ford and Maugeri were also present. Ford testified that Maugeri had ordered Worthington to shoot Castellano. Maugeri testified that Worthington had acted on his own. Thus the evidence that $180,000 worth of cocaine, instead of $8,000 in cash, had been taken by Castellano was devastatingly damaging and inculpatory of Maugeri in that it simultaneously explained and supported Ford's testimony as to his commission of the crime and provided persuasive evidence of his motive for having done so.
As a threshold matter, we accept the appellant's position that the reference to cocaine may and must be separated from that portion of Castellano's statement in which he admitted another crime, that of burglary of the aircraft. See and compare, 5 J. Wigmore, Evidence, § 1465 at 339, n. 1 (Chadbourn rev. 1974); E. Cleary, McCormick on Evidence § 79 at 677 (2d Ed. 1972); Jefferson, Declarations Against Interest: An Exception to the Hearsay Rule, 58 Harv.L.Rev. 1, 60 (1944). While that statement *977 was also against Castellano's penal interest, the existence of the burglary was not challenged, and was indeed conceded by Maugeri at the trial; the nature of the item which was stolen was, in contrast, subject to a dispute equivalent in intensity to that concerning the defendant's guilt. Hence, properly regarded, the point before us is whether the reference to cocaine as the subject of the burglary was sufficiently reliable and against Castellano's penal interest to justify its admission.
In determining that issue, we generally adopt the test stated in United States v. Riley, 657 F.2d 1377 (8th Cir.1981), cert. denied, 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983), for the admission of inculpatory statements against penal interest[2] in criminal cases under the federal equivalent to section 90.804(2)(c):
[B]efore an inculpatory statement against penal interest is admissible under Rule 804(b)(3), it must be shown that (1) the declarant is unavailable as a witness, (2) the statement must so far tend to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement.[3]
United States v. Riley, 657 F.2d at 1383.
Even though the hearsay statement may pass muster under the statutory *978 rule of evidence, it must also survive the constitutional scrutiny of the sixth amendment. Like the evidentiary rule, the confrontation clause seeks to ensure reliability. In Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), the Supreme Court held that the admission of hearsay declaration does not violate the defendant's sixth amendment rights only if it
bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.
In approaching this issue as it relates to statements against penal interest, we agree with the analysis in State v. Parris, 98 Wash.2d 140, 654 P.2d 77, 81 (1982):
It is not correct to say that inculpatory declarations are included within the "firmly rooted exceptions" to the hearsay rule. According to Ohio v. Roberts, supra 448 U.S. at 66, 100 S.Ct. at 2539, if hearsay statements fall within a "firmly rooted exception" to the hearsay rule, they are admissible without "particularized guarantees of trustworthiness." Inculpatory statements must be accompanied by such guaranties in order to be admissible. Thus, we can only say that inculpatory statements are a "firmly rooted exception" if we add the proviso that they must be accompanied by corroborating circumstances clearly indicating their trustworthiness, or, in the words of the Supreme Court, "particularized guarantees of trustworthiness". This is a proviso required by substantive law, not one found expressed in the rule, and it places such statements in the second category of the Roberts test.

Whether this requirement is read into the rule, as was done in the Court of Appeals, or is simply recognized as a constitutional prerequisite to the admission of the evidence, the result is the same. [footnote omitted, e.s.]
As was similarly said in United States v. Katsougrakis, 715 F.2d 769, 776 (2d Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984), "a hearsay statement that satisfies the penal interest exception usually will survive Confrontation Clause scrutiny because the `trustworthiness' issue has already been decided in favor of admissibility." See also and compare, Olson v. Green, 668 F.2d 421 (8th Cir.1982); United States v. Sarmiento-Perez, 633 F.2d 1092 (5th Cir.1981), cert. denied, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 75 (1982).
Applying these tests:
1. It is plain that Castellano, who is dead, was unavailable as a witness.
2. The trial court properly found that the challenged portion of Castellano's statement  that is, the reference to the cocaine as the subject matter of his theft  so far tended to subject him to criminal liability for drug trafficking, section 893.135, Florida Statutes (1981) (imposing 15 year minimum penalty), that a reasonable person in his position would not have made the statement, even to his girlfriend, unless he believed it to be true. Thus the facial requirements of the statute for the admission of a statement against penal interest were satisfied. Baker v. State, 336 So.2d 364 (Fla. 1976); Lambert v. Doe, 453 So.2d 844 (Fla. 1st DCA 1984); see Green v. Georgia, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979) (close relationship between declarant and listener does not destroy disserving potential of the statement); Chambers v. Mississippi, 410 U.S. 284, 300, 93 S.Ct. 1038, 1048, 35 L.Ed.2d 297 (1973) (same); United States v. Mock, 640 F.2d 629 (5th Cir.1981)(statement to former wife); United States v. Goins, 593 F.2d 88 (8th Cir.1979), cert. denied, 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979) (statement to daughter); United States v. Bagley, 537 F.2d 162, 165 (5th Cir.1976), cert. denied, 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed.2d 794 (1977) (statement to cellmates); United States v. Barrett, *979 539 F.2d 244 (1st Cir.1976)(statement to fellow card player). [4]
3. The surrounding circumstances, including but not limited to the subsequent use of the cocaine purportedly taken in the theft, the established fact that something was taken from Maugeri's airplane and that Castellano was killed in a confrontation over whatever it was, see State v. Valladares, 99 Wash.2d 663, 664 P.2d 508 (1983), as well as the other evidence concerning the murder,[5] see United States v. Mock; State v. Parris, were such as to "clearly indicate," see United States v. Riley, and cases cited; United States v. Alvarez, 584 F.2d 694, 695 (5th Cir.1978), or, as said in Ohio v. Roberts, 448 U.S. at 66, 100 S.Ct. at 2539, provide "particularized guarantees" of the trustworthiness of the statement, so as to permit both statutorily and constitutionally, the introduction of inculpatory hearsay like this against the defendant in a criminal prosecution. See also Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); United States v. Layton, 720 F.2d 548 (9th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984); United States v. Katsougrakis; United States v. Brainard, 690 F.2d 1117 (4th Cir.1982); United States v. Mock; United States v. Robinson, 635 F.2d 363 (5th Cir.1981); United States v. Garris, 616 F.2d 626 (2d Cir.1979), cert. denied, 447 U.S. 926, 100 S.Ct. 3021, 65 L.Ed.2d 1119 (1980); United States v. Alvarez; United States v. White, 553 F.2d 310 (2d Cir.1977), cert. denied, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977); United States v. H & M, Inc., 562 F. Supp. 651 (M.D.Pa. 1983); State v. Valladares; State v. Parris.
We further hold, contrary to the position of the defendant and the Fifth Circuit as stated in United States v. Sarmiento-Perez, United States v. Alvarez, and United States v. Bagley, that the credibility of Ford's in-court testimony that Castellano made the statement in question was entirely for the jury, see 5 J. Wigmore, Evidence §§ 1368, 1427 (Chadbourn rev. 1974), and is not a factor which need be considered in determining its admissibility either by the trial court prior to admission or by this court in the review of that ruling. Our conclusion to this effect is in accord with the majority of the circuits which have passed upon the issue. United States v. Katsougrakis;[6]United States v. Atkins, 558 F.2d 133 (3rd Cir.1977), cert. denied, 434 U.S. 1071, 98 S.Ct. 1254, 55 *980 L.Ed.2d 774 (1978); United States v. Brainard; but see United States v. Satterfield, 572 F.2d 687 (9th Cir.1978), cert. denied, 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978).
Finally, we reject Maugeri's claims that the final sentence of section 90.804(2)(c)[7] precludes the admission of all inculpatory statements against penal interest. This provision was derived from one included by the House Committee in the proposed federal rule but deleted as unnecessary in the Senate Judiciary Committee. As its congressional history clearly reveals, see United States v. Palumbo, 639 F.2d 123, 129-131 (3rd Cir.1981)(Adams, J., specially concurring), it was designed simply to codify the principles of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which concerns the admissibility against one defendant of the incriminating statements contained in the confession of an alleged co-perpetrator. Fairly read in this light, the sentence goes no further than to exclude statements which implicate both the declarant and the defendant in the same crime which is the subject of the pending action, as was the case in Walker v. State, 426 So.2d 1180 (Fla. 5th DCA 1983).[8] The provision patently does not apply to this case in which the admission of one crime provides the motive for the commission of another. See also Law Revision Council Note  1976, 6 C Fla. Stat. Ann. § 90.804(2)(c) at 362 (1979). ("[T]hird party confessions which implicate the accused... would be admissible if they are, in fact, declarations against the interest of the declarant when made.")
We have carefully examined the remaining points on appeal and find them without merit.[9]
Affirmed.
NOTES
[1] Hearsay exceptions.  The following are not excluded under s. 90.802, provided that the declarant is unavailable as a witness:
* * * * * *
(c) Statement against interest.  A statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest or tended to subject him to liability or to render invalid a claim by him against another, so that a person in the declarant's position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement. A statement or confession which is offered against the accused in a criminal action, and which is made by a codefendant or other person implicating both himself and the accused, is not within this exception.
[2] Riley refers to the rule as involving collateral inculpatory statements. Since the cocaine statement, however, was in and of itself both disserving to Castellano as to his possession of cocaine and inculpatory to Maugeri with respect to the instant charges of murder and burglary, it is properly regarded as a non collateral inculpatory statement. The terms are defined as follows:

An inculpatory statement is one which implicates both the declarant and the defendant in criminal activity and is admitted against the defendant. Such statements can be divided into collateral and noncollateral statements. In a noncollateral inculpatory statement, the facts inculpating the defendant are found in the portion of the statement directly against the declarant's interest. In his treatise, District Judge Jack Weinstein presents as an example of such a statement one in which the declarant states that he has stolen goods, with the statement admitted against a defendant charged with possession of stolen goods. Here, the fact that the declarant has stolen the items is disserving to the declarant and inculpates the defendant. Because such statements can arise only where a defendant is accused of certain less common crimes, they do not appear often in the cases.
The more common type of inculpatory statement is the collateral inculpatory declaration. Here, the inculpatory material is not found in the portion of the statement directly against the declarant's interest, but appears instead in another portion of the statement. An example of such a statement would be the declarant's assertion that "John and I robbed the bank" admitted in John's trial for bank robbery. In this example the relevant material is not contained in the disserving [or against interest] segment ("I robbed the bank."); instead, it is the collateral portion ("John robbed the bank.").
Exculpatory statements are declarations against the declarant's interest which indicate that the defendant is not responsible for the crime charged. These also can be divided into the collateral and noncollateral classifications described above.
Comment, Federal Rule of Evidence 804(b)(3) & Inculpatory Statements Against Penal Interest, 66 Calif.L.Rev. 1189, 1190 n. 7 (1978) (emphasis in original, citation omitted), citing 4 J. Weinstein & M. Berger, Weinstein's Evidence § 804(b)(3)[03], at 804-96 to 97 (1977) [hereinafter Weinstein's Evidence]. While Weinstein suggests that, in fact, such instances have been rare, Weinstein's Evidence § 804(b)(3)[03] at 804-96 to 97, he cites and we have discovered not a single prior decision in which the admissibility of such a statement has actually been considered. Weinstein points out that the dual nature of such a declaration, incriminating the declarant while inculpating the defendant serves to support the reliability of the statement since, "[f]ar less dangers are involved when the inculpatory statement does not directly inculpate the accused in the same crime in which declarant participated ... [because it] does not raise the same danger that declarant is shifting blame to the accused to escape some of the onus." Weinstein's Evidence § 804(b)(3)[03] at 804-113 to 114.
Because, insofar as the underlying principles are concerned, we can discern no basis for distinguishing between collateral and noncollateral statements, we apply the Riley test here.
[3] Although the rule itself requires corroboration only for exculpatory statements, it has been universally held  and we agree  that inculpatory statements must be supported by corroborating circumstances which "clearly indicate the trustworthiness of the statement." See United States v. Riley, 657 F.2d at 1383 n. 7.
[4] The defendant suggests that Castellano may have lied about the kilos in order to "impress" Ford, with whom he lived in a sordid relationship dominated by the use of cocaine and other drugs he ordinarily supplied. While this argument is not without substance, we think it is directed to the wrong body. Bearing in mind that the defendant was free to and did challenge the reliability of the statement before the jury, United States v. Brainard, 690 F.2d 1117, 1125 n. 14 (4th Cir.1982), we cannot find that this circumstance "so far impugned the reliability presumed from the remarks' disserving character," as to render them inadmissible under the rule. United States v. Barrett, 539 F.2d at 253.
[5] We are not uninfluenced by the fact, which is also apparently unique in the decided cases, that the defendant took the stand and testified to the contrary of the truth of the subject of the declaration, as well as, of course, of the testimony of the in-court witness as to his guilt. The fact that he obviously confronted and cross-examined Ford on that issue provided him, as a practical matter, with the ability to effectively challenge the cocaine story as well. And the jury's acceptance of Ford's version of Maugeri's guilt  particularly in the face of his denial  reflected its disbelief also of his testimony that $8,000 and not two kilos of cocaine had been placed in his plane.
[6] do not adopt the position taken by the Fifth Circuit that the credibility of the in-court witness must be evaluated before the jury is permitted to hear testimony that inculpates both the out-of-court declarant and the accused. See United States v. Alvarez, 584 F.2d at 701; United States v. Bagley, 537 F.2d at 167. We hold that the district judge must only be satisfied that the statement falls within a firmly recognized exception to the hearsay rule and that attending circumstances confirm its trustworthiness. While the hearsay declarant is, and necessarily must be, unavailable to testify, the in-court witness takes the stand and is subject to cross-examination. The jury is able to observe firsthand the witness' demeanor and response to questions; it may assess without obstacle the credibility of the witness. Indeed, to require a preliminary assessment of the in-court witness' credibility would, in our judgment, be a usurpation of the jury function. See United States v. Atkins, 558 F.2d 133, 137 (3d Cir.), cert. denied, 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 289 (1977); Tague, Perils of the Rulemaking Process: The Development, Application, and Unconstitutionality of Rule 804(b)(3)'s Penal Interest Exception, 69 Geo.L.J. 851, 974 (1981); see also Dutton v. Evans, 400 U.S. 74, 88, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) ("From the view-point of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard." (footnote omitted)); United States v. Lieberman, 637 F.2d 95, 104 n. 12 (2d Cir.1980). We do not read the language or legislative history of Rule 804(b)(3) to contemplate a wholesale intrusion into the jury's function.
United States v. Katsougrakis, 715 F.2d at 777.
[7] "A statement or confession which is offered against the accused in a criminal action, and which is made by a codefendant or other person implicating both himself and the accused, is not within this exception."
[8] Indeed, this situation is one in which the inherent likelihood that the declarant is attempting to serve his own interest by implicating someone else has often led to the exclusion of the statement even under the federal rule, which, of course, does not include the last sentence of section 90.804(2)(c). E.g., United States v. Riley, and cases cited; see also Peninsular Fire Ins. Co. v. Wells, 438 So.2d 46 (Fla. 1st DCA 1983). The sentence may be viewed therefore as a mere statutory reflection of that general principle.
[9] We note briefly that the claim of fundamental misconduct in the prosecutor's unobjected to references in final argument to Maugeri's involvement in cocaine dealing falls with our holding that the testimony on the subject was properly admitted into evidence and was thus a proper subject of comment. Jameson v. Wainwright, 719 F.2d 1125 (11th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 2355, 80 L.Ed.2d 827 (1984); Jordan v. State, 441 So.2d 657 (Fla. 3d DCA 1983). Similarly there was no violation of the "other crimes" rule of Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), in the light of the overwhelming relevance of the cocaine issue to the defendant's motive and intent in committing the crime. Jameson v. Wainwright; Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). We likewise reject the defendant's contentions concerning the failure of the trial court to grant a self-defense instruction on its own motion, when the charge had deliberately not been requested by defense counsel, see Jones v. State, 197 So.2d 829 (Fla. 3d DCA 1967). Finally, no error was involved in the fact that, without objection, the defendant was not present during a portion of the charge conference. Randall v. State, 346 So.2d 1233 (Fla. 3d DCA 1977).